UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOE et al.,

          Petitioners,          Case No. 1:25-cv-1779

v.                                    Honorable Jane M. Beckering

KEVIN RAYCRAFT et al.,

          Respondents.
_____/

## OPINION

Petitioner John Doe,[1] a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled combined petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for declaratory, injunctive, and mandamus relief. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

---

[1] Petitioner John Doe, an immigration detainee, and Petitioner James Smith, John Doe's spouse, filed this action as joint petitioners. The parties filed a joint stipulation indicating that the parties agreed to the voluntary dismissal of Petitioner James Smith from this action. (ECF No. 19.) Pursuant to the parties' joint request, Petitioner James Smith is dismissed from this action. As such, the Court addresses only Petitioner John Doe's claims in this opinion, and the Court's reference to "Petitioner" in this opinion is a reference to Petitioner John Doe only. In the joint stipulation, the parties also agreed to the voluntary dismissal of Respondent Joseph B. Edlow. (*Id.*) As such, pursuant to the parties' joint request, Respondent Edlow is dismissed from this action.

**Discussion**

I.     **Relevant Procedural History**

Petitioner initiated this action in the United States District Court for the Eastern District of Michigan. (Pet., ECF No. 1.) In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action, declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act (INA), and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.37–38.)

Pursuant to the Eastern District of Michigan's briefing schedule, Respondents filed a response to the petition (ECF No. 6) and a motion to dismiss (ECF No. 7). Petitioner then filed a reply to the response (ECF No. 8) and a response to the motion to dismiss (ECF No. 10). Thereafter, Respondents filed a reply to Petitioner's response to the motion to dismiss. (ECF No. 11.) The Eastern District of Michigan then transferred the action to this Court. (Transfer Order, ECF No. 16.)

After the action was transferred to this Court, the parties filed a joint stipulation, in which they stipulate, *inter alia*, that Counts Three and Four[2] of the petition are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (ECF No. 19.) Thereafter, Petitioner filed a motion for temporary restraining order or preliminary injunction directing Respondents to immediately release him from custody during the pendency of his petition for writ

---

[2] In Counts Three and Four, Petitioner raised claims regarding violations of the Administrative Procedure Act due to the alleged unreasonable delay in considering applications that Petitioner had filed in his immigration proceedings. (Pet., ECF No. 1, PageID.34–37.)

of habeas corpus.[3] (ECF No. 22.) Respondents filed a response in opposition to the motion on January 26, 2026. (ECF No. 23.)

## II.     Relevant Factual Background

Petitioner is a native and citizen of Haiti. (Pet., ECF No. 1, PageID.6; Hackett Decl. ¶ 4, ECF No. 6-2, PageID.139.) On December 27, 2023, Petitioner entered the United States at the Nogales, Arizona, Port of Entry. (Notice to Appear (NTA), ECF No. 1-2, PageID.43.) At that time, the Department of Homeland Security issued Petitioner a Form I-862, NTA, charging him with inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) for being "an immigrant who, at the time of application for admission, is not in possession of [valid immigration and travel documents]." (*Id.*, PageID.43, 46.) Petitioner was then paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) until December 25, 2025. (Hackett Decl. ¶ 5, ECF No. 6-2, PageID.139; NTA, ECF No. 1-2, PageID.43 (stating that Petitioner was "paroled into the United States of America [p]ursuant to Section 212(d)(5) of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1182(d)(5)); Form I-94, ECF No. 1-3, PageID.48; Dec. 27, 2023, Form I-213, ECF No. 6-3, PageID.145.) On June 12, 2024, Petitioner filed a Form I-589, Application for Asylum and for Withholding Removal, and on November 19, 2024, Petitioner filed a Form I-821, Application for Temporary Protected Status. (Hackett Decl. ¶¶ 6–7, ECF No. 6-2, PageID.140; Pet., ECF No. 1, PageID.9.) The applications remain pending. (Hackett Decl. ¶ 7, ECF No. 6-2, PageID.140; Pet., ECF No. 1, PageID.9.)

"On April 14, 2025, [Petitioner] was working as a delivery assistant on a truck when the driver took a wrong turn near the Ambassador Bridge." (Pet., ECF No. 1, PageID.9.) Specifically,

---

[3] As set forth herein, the Court will grant Petitioner's § 2241 petition, which resolves this action; therefore, Petitioner's request for the Court to take certain action during the pendency of this action is moot.

after the wrong turn, "Canadian officials encountered [Petitioner] at the border but turned him around to go back to the United States," and when Petitioner was questioned at the border by United States officials, Petitioner "stated that he made a wrong turn based on erroneous GPS directions." (Hackett Decl. ¶ 8, ECF No. 6-2, PageID.140.) Petitioner was then arrested by ICE. (*Id.* ¶ 9; Pet., ECF No. 1, PageID.10.) After Petitioner's arrest, ICE "served him with a[] Form I-200, Warrant for Arrest of Alien, and Form I-286, Notice of Custody Determination." (Hackett Decl. ¶ 9, ECF No. 6-2, PageID.140.) Petitioner has remained in custody since that time. (Pet., ECF No. 1, PageID.10–13.) During Petitioner's detention, Petitioner twice sought release on parole, and both requests were denied. (*Id.*, PageID.12–13.)

### III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV. Jurisdiction

Respondents argue that the Court "lacks jurisdiction to review ICE's revocation of [Petitioner's] parole." (Mot. Dismiss, ECF No. 7, PageID.163–168 (capitalization changed and emphasis omitted).) Specifically, Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) forecloses judicial review of the agency's termination or revocation of Petitioner's parole. (*See id.*)

This is not a novel argument. Other courts throughout the country have thoroughly addressed the jurisdiction-based arguments raised by Respondents in this case and have rejected

them. *See, e.g.*, *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1133, 1136–43 (D. Or. 2025) (concluding that § 1252(a)(2)(B)(ii) does not foreclose judicial review and distinguishing *Hassan v. Chertoff*, 593 F.3d 789 (9th Cir. 2010), a case relied upon by Respondents in the present case); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 141–42 (W.D.N.Y. 2025); *Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *4–5 (D. Minn. Dec. 1, 2025).

>Section 1252(a)(2)(B)(ii) states as follows:
>
>(B) Denials of discretionary relief
>
>Notwithstanding any other provision of law (statutory or nonstatutory), including [any habeas provision], . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
>. . .
>
>(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B)(ii). As the United States District Court for the District of Minnesota recently explained in *Gabriel B.M. v. Bondi*,

>Because Congress gave the Secretary of Homeland Security discretion to revoke a noncitizen's parole, Respondents reason, § 1252(a)(2)(B)(ii) precludes review of the decision to revoke Petitioner's parole.
>
>Respondents focus on the wrong "decision or action." Here, Petitioner does not challenge the merits of Respondents' discretionary determination regarding his parole status, and the Court is not weighing in on the discretionary consideration of whether the reasons for Petitioner's parole support continued presence in the United States. Rather, Petitioner is challenging whether Respondents followed the procedures enumerated in the parole statute and 8 C.F.R. § 212.5(e)(2)(i) in revoking it. . . .
>
>Whether Respondents complied with mandatory procedures in exercising their discretionary power is not precluded from review by § 1252(a)(2)(B)(ii). As stated by the Eighth Circuit, "even if § 1252(a)(2)(B) otherwise bars review of a discretionary act, [federal courts] have jurisdiction to review a 'predicate legal question that amounts to a nondiscretionary determination underlying the denial of relief.'" *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) (quoting

5

> *Ibrahimi v. Holder*, 566 F.3d 758, 764 (8th Cir. 2009)); *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1099 (8th Cir. 2016) (same); *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 906 (8th Cir. 2005) (holding 8 U.S.C. § 1252(a)(2)(B) does not preclude review of "the predicate legal question whether the [agency] properly applied the law to the facts in determining an individual's eligibility to be considered for the relief") (citations omitted). The same is true regarding review of an agency's compliance with its own regulations, at least where "the rules were intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion." *Rajasekaran*, 815 F.3d at 1099 (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970)) (cleaned up).

*Gabriel B.M.*, 2025 WL 3443584, at *4–5.

Furthermore, as explained by the United States District Court for the Western District of New York in *Mata Velasquez v. Kurzdorfer*,

> As the Second Circuit has held, . . . even when a "statute strips jurisdiction over a substantive discretionary decision, [it] does not strip jurisdiction over procedural challenges." *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 86 (2d Cir. 2008) (explaining agency action "not performed in accordance with the mandatory rescission procedures" is "not specified . . . to be in the discretion of the Attorney General" (citation and internal quotation marks omitted)). In other words, while courts cannot question the discretion that is exercised, they can address the process used to exercise that discretion.
>
> That is precisely what Mata Velasquez challenges here. He says that before he could be re-detained, he was entitled to some procedural due process. And even if this Court were ultimately to reject Mata Velasquez's argument about the process to which he is entitled, "[t]he proper course . . . would be to find subject matter jurisdiction and then . . . [, if appropriate, to] find that [he] had no right to the asserted procedural safeguards, and, therefore, had provided no claim upon which relief could be granted." *See Mantena*, 809 F.3d at 729–30. Section 1252(a)(2)(B)(ii) therefore does not bar this Court from exercising jurisdiction over Mata Velasquez's claims.

*Mata Velasquez*, 794 F. Supp. 3d at 141–42.

The Court finds the reasoning in these non-binding cases to be persuasive and concludes that 8 U.S.C. § 1252(a)(2)(B)(ii) does not foreclose judicial review of Petitioner's claim regarding the agency's termination or revocation of Petitioner's parole.

## V.     Merits Discussion

### A.     Statutory and Regulatory Basis for Petitioner's Parole and Recent Detention

Here, Petitioner entered the United States at a port of entry and was subsequently paroled into the United States under 8 U.S.C. § 1182(d)(5)(A) until December 25, 2025. (Hackett Decl. ¶ 5, ECF No. 6-2, PageID.139; NTA, ECF No. 1-2, PageID.43; Form I-94, ECF No. 1-3, PageID.48; Dec. 27, 2023, Form I-213, ECF No. 6-3, PageID.145.) Petitioner also filed an asylum application, which remains pending. (Hackett Decl. ¶¶ 6–7, ECF No. 6-2, PageID.140; Pet., ECF No. 1, PageID.9.) When Petitioner was arrested by ICE on April 14, 2025, Petitioner was still on parole under § 1182(d)(5)(A). (Pet., ECF No. 1, PageID.9; NTA, ECF No. 1-2, PageID.43; Form I-94, ECF No. 1-3, PageID.48; Dec. 27, 2023, Form I-213, ECF No. 6-3, PageID.145.)

The INA "establishes the framework governing noncitizens' entry into and removal from the United States, with regulations promulgated by the enforcing agencies providing further governance." *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132 (D. Or. 2025). "Noncitizens who arrive at a port of entry without a visa or other entry document, like Petitioner, are deemed 'inadmissible' under 8 U.S.C. § 1182(a)(7)" due to their lack of entry documents. *Id.* at 1132 & n.7 (noting that "[d]epending on the circumstances, other categories of inadmissibility may also apply, but § 1182(a)(7) applies for noncitizens without proper documentation"). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of prosecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The government may place the noncitizen into expedited removal proceedings, *see* 8 U.S.C. § 1225(b)(1), or the government may place the noncitizen into regular removal proceedings under 8 U.S.C. § 1229(a). *See Y-Z-L-H*, 792 F. Supp. 3d at 1132–33 (citing 8 U.S.C. § 1225(b)(2)).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). However, "applicants for admission may be temporarily released on parole [into the United States] 'for urgent humanitarian reasons or significant public benefit,'" as set forth in 8 U.S.C. § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)). The decision to grant parole pursuant to 8 U.S.C. § 1182(d)(5)(A) is determined "on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). Then, "when the purpose of the parole has been served," § 1182(d)(5)(A) provides that "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

To terminate the previously granted parole, the agency must comply with the applicable regulatory and statutory requirements. As set forth in 8 C.F.R. § 212.5(e)(2)(i), which governs the "[t]ermination of parole,"

> In cases not covered by paragraph (e)(1) of this section,[4] upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i). That is, "[u]nder the governing regulation, [§ 1182(d)(5)(A)] parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public

---

[4] Paragraph (e)(1) provides for the automatic termination of parole without written notice where the noncitizen has either departed from the United States or at the expiration of time for which the parole was authorized. The parties have not suggested that either circumstance applies here.

benefit no longer warrant parole." *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. § 212.5(e)). As explained below, the Court concludes that Respondents have failed to follow the applicable statutory and regulatory provisions to terminate Petitioner's parole. *Cf. Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *2 (D.D.C. Aug. 1, 2025) (holding that the government failed to follow the applicable statutory and regulatory provisions and that paroled noncitizens cannot be subject to expedited removal proceedings); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *5–7 (E.D. Mich. Oct. 29, 2025) (same); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594, at *10 (N.D. Ohio Oct. 16, 2025) (same).

    Here, based on the information before the Court, it does not appear that, at the time that Petitioner was arrested, the purpose of Petitioner's parole had been accomplished. Petitioner left Haiti, seeking asylum in the United States, and Petitioner entered the United States at a port of entry. (NTA, ECF No. 1-2, PageID.43; Form I-94, ECF No. 1-3, PageID.48; Dec. 27, 2023, Form I-213, ECF No. 6-3, PageID.145.) At that time, Petitioner was granted parole until December 25, 2025, pursuant to 8 U.S.C. § 1182(d)(5)(A), which provides for parole into the United States "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A). (*See* NTA, ECF No. 1-2, PageID.43; Form I-94, ECF No. 1-3, PageID.48; Dec. 27, 2023, Form I-213, ECF No. 6-3, PageID.145.) Petitioner then filed a Form I-589 Application for Asylum and Withholding Removal, which remains pending. (Hackett Decl. ¶¶ 6–7, ECF No. 6-2, PageID.140; Pet., ECF No. 1, PageID.9.) Thus, when Petitioner was arrested and detained on April 14, 2025, Petitioner was still seeking asylum and was still on parole, and there is nothing before the Court to suggest that the humanitarian reason or public benefit that justified Petitioner's parole did not apply at that time.

Further, district courts that have addressed the termination of § 1182(d)(5)(A) parole "have found that just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute," and the Court finds the reasoning in these non-binding cases to be persuasive. *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (citations omitted) (addressing this issue, and granting the petitioner's motion for preliminary injunction and ordering that the petitioner be released); *see, e.g., Y-Z-L-H*, 792 F. Supp. 3d at 1137–47 (addressing this issue, and granting the petitioner's habeas petition and ordering that the petitioner be released from custody); *Loaiza Arias*, 2025 WL 3295385, at *2–4 (same); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10–13 (S.D. Cal. Oct. 1, 2025) (same); *Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), --- F. Supp. 3d ----, 2025 WL 2630826, at *14–17 (S.D.N.Y. Sept. 12, 2025) (same); *Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *6–7 (D. Minn. Dec. 1, 2025) (addressing this issue, and granting the petitioner's request for a preliminary injunction and ordering the petitioner's release from custody); *Orellana v. Francis*, No. 25-cv-04212 (OEM), 2025 WL 2822640, at *2–3 (E.D.N.Y. Oct. 3, 2025) (addressing the issue in the context of a motion for reconsideration filed by the respondents, and affirming the court's grant of habeas relief to the petitioner and the court's order to release the petitioner). *But see Doe v. Noem*, 152 F.4th 272, 278–79, 285 (1st Cir. 2025) (reversing district court's grant of preliminary relief and vacating district court's stay of the termination notice for previously granted parole because "Plaintiffs ha[d] not demonstrated a strong likelihood of success in showing that under the statute, the Secretary must terminate these grants of parole under the [parole] program[s] on an individual basis").[5]

---

[5] *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), is distinguishable from the present case. As the United States District Court for the District of Minnesota recently explained in *Gabriel B.M. v. Bondi*, a case that is similar to the present action:

Here, there is no indication in the record before the Court that any such case-by-case determination *regarding the revocation of Petitioner's parole* was made *before* Petitioner was arrested. Respondents state that they encountered Petitioner on April 14, 2025, after he made a wrong turn at the border between the United States and Canada. (Hackett Decl. ¶ 8, ECF No. 6-2,

---

First, unlike here, the government in *Doe* did make a determination that the purpose of the plaintiffs' parole had been accomplished. The plaintiffs, non-citizens who entered into the United States through the Cuba, Haiti, Nicaragua, and Venezuela ("CHNV") parole program, lost parole status when the government, via a lengthy and thorough notice published in the Federal Register, decided to terminate the CHNV program altogether, determining that the program no longer served its implementing purpose. In contrast, for Petitioner's revocation, there is no evidence to suggest that such a determination or other finding was made *at all*, and the evidence in the record strongly suggests it wasn't.

Second, the *Doe* court did not address the regulatory requirements established by 8 C.F.R. § 212.5(e)(2)(i), which implement the parole statute and illuminate the procedural requirements for termination of parole. . . . Part 212.5(e)(2)(i) not only restates the revocation authority enumerated in § 1182(d)(5)(A), but also clarifies the (admittedly minimal) procedures the Respondents must follow when invoking the parole statute's revocation authority. The Respondents' failure to follow the governing regulation is equally unlawful. . . .

Finally, and perhaps most importantly, the *Doe* court's interpretation of § 1182(d)(5)(A) reads the bulk of the revocation clause out of the statute. That interpretation rests entirely on the fact that the revocation clause does not include the same "case-by-case" language. But such a myopic focus on that omission elides a significant portion of the text of the revocation clause. The revocation clause in the parole statute gives the Secretary of Homeland Security the authority to revoke parole "when the purposes of such parole shall, in the opinion of the Secretary . . ., have been served." If Respondents were not required to make such a determination to effect termination of parole, then there would be no reason for this language to have been included in the statute. This contradicts "one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Instead, because the parole statute (and its implementing regulation) require such a preconditional determination to be made, the Court enforces it here.

*Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *7 (D. Minn. Dec. 1, 2025). *Doe v. Noem* is distinguishable from the present action for these same reasons.

11

PageID.140.) Petitioner was then arrested by ICE. (*Id.* ¶ 9; Pet., ECF No. 1, PageID.10.) After Petitioner's arrest, ICE "served him with a[] Form I-200, Warrant for Arrest of Alien, and Form I-286, Notice of Custody Determination." (Hackett Decl. ¶ 9, ECF No. 6-2, PageID.140.) Respondents argue that this encounter with Petitioner after he made a wrong turn at the border and the subsequent issuance of the Form I-200, Warrant for Arrest of Alien, and Form I-286, Notice of Custody Determination, satisfy any requirement of a case-by-case determination regarding parole; however, Respondents do not explain, and the Court fails to discern, how the issuance of these forms *after* ICE arrested Petitioner could show that ICE made any individualized determination about Petitioner's parole *prior* to Petitioner's arrest. And, regardless, there is no indication in the record presently before the Court that immigration officials considered Petitioner's parole when they began Petitioner's detention on April 14, 2025. (*See* Form I-200, Warrant for Arrest of Alien, ECF No. 6-4 (indicating that Petitioner was being arrested on April 14, 2025, because of "the pendency of ongoing removal proceedings against the subject" and he "lack[ed] immigration status or notwithstanding such status is removable under U.S. immigration law"); Form I-286, Notice of Custody Determination, ECF No. 6-5, PageID.47 (indicating that Petitioner was being "[d]etained by the Department of Homeland Security" on April 14, 2025, and providing no explanation as to why Petitioner was being detained).) Under these circumstances, the record before the Court necessarily fails to show that Respondents made an individualized determination regarding the revocation of Petitioner's parole on April 14, 2025. Moreover, although Respondents subsequently twice denied Petitioner's request to be released on parole during his post-April 14, 2025, detention, any denial of parole *after* April 14, 2025, including any after-the-fact interpretations of the events on April 14, 2025, does remedy the initial failure to

make the required individualized determination about Petitioner's parole on April 14, 2025, when Petitioner's detention started.

In summary, as explained above, based on the information that is presently before the Court, there is no indication that Respondents followed the applicable statutory and regulatory requirements to revoke or terminate Petitioner's parole on April 14, 2025. If Respondents did not follow those requirements, then they did not have the authority to detain Petitioner after April 14, 2025, "unless there [wa]s some other valid reason to arrest him." *Mata Velasquez*, 794 F. Supp. 3d at 145; *cf. Norfolk S. Ry. Co. v. U.S. Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at *6 (6th Cir. Dec. 2, 2022) (discussing that "an agency's action that fails to observe the procedures required by its own regulations should be set aside" (citation omitted)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations[,] . . . [and] '[a]n agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.'" (additional internal quotation marks omitted) (quoting *Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998))).

In this case, while Respondents may have had a reason to *initially* stop Petitioner at the time that he reentered the country after making a wrong turn at the border with Canada, based on the record before the Court, Respondents' decision to detain Petitioner after April 14, 2025, was based only on his status as a noncitizen. (*See* Form I-200, Warrant for Arrest of Alien, ECF No. 6-4 (indicating that Petitioner was being arrested on April 14, 2025, because of "the pendency of ongoing removal proceedings against the subject" and he "lack[ed] immigration status or notwithstanding such status is removable under U.S. immigration law"); Form I-286, Notice of

13

Custody Determination, ECF No. 6-5, PageID.47 (indicating only that Petitioner was being "[d]etained by the Department of Homeland Security" on April 14, 2025, and providing no explanation as to why Petitioner was being detained).) Moreover, Respondents' after-the-fact interpretations and explanation of the events on April 14, 2025, fail to show that on April 14, 2025, immigration officials detained Petitioner for any reason specific to Petitioner, other than his status as a noncitizen. Indeed, Respondents acknowledge that Petitioner's *status as a noncitizen*, not any reason based on Petitioner's specific actions on April 14, 2025, was the basis for Respondents' decision to subject Petitioner to mandatory detention on April 14, 2025. (Hackett Decl. ¶ 9, ECF No. 6-2, PageID.140 (stating that on April 14, 2025, "CBP detained [Petitioner] under INA § 235(b)(1)(A)(i) because he is an arriving alien who applied for admission at a port of entry").) The detention of Petitioner due only to his noncitizen status is consistent with Respondents' argument that *any noncitizen*, regardless of whether they are already present and residing in the United States, is "an alien seeking admission" subject to mandatory detention under § 1225. This Court and other courts throughout the country have rejected this argument. *Cf., e.g.*, *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025).

Accordingly, for the reasons set forth above, the Court concludes that Respondents failed to follow the applicable statutory and regulatory requirements to revoke or terminate Petitioner's § 1182(d)(5)(A) parole.[6] Therefore, when ICE arrested and detained Petitioner on April 14, 2025, he was still on parole under § 1182(d)(5)(A).

### B.  Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. Respondents counter Petitioner's arguments by stating that Petitioner has received notice of the charges against him, has access to counsel, is scheduled to attend hearings with an immigration judge, and has the right to appeal the denial of any request for bond.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). Thus, noncitizens, such as Petitioner, are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *3 (6th Cir. Jan. 18. 2023).

---

[6] The Court has recently reached the same conclusion in other habeas corpus actions filed by immigration detainees who had received § 1182(d)(5)(A) parole. *See, e.g.*, *Delgado v. Raycraft*, No. 1:25-cv-1723, 2026 WL 177629 (W.D. Mich. Jan. 22, 2026); *Kenzhebaev v. Noem*, No. 1:25-cv-1786, 2025 WL 3737975 (W.D. Mich. Dec. 29, 2025); *Hernandez v. Raycraft*, No. 1:25-cv-1719, 2025 WL 3730936 (W.D. Mich. Dec. 26, 2025); *Tezara Munoz v. Lynch*, No. 1:25-cv-1632, 2025 WL 3687338 (W.D. Mich. Dec. 19, 2025); *Gil Pirona v. Noem*, No. 1:25-cv-1571, 2025 WL 3687339 (W.D. Mich. Dec. 19, 2025); *Infante Rodriguez v. Raycraft*, No. 1:25-cv-1560, 2025 WL 3673583 (W.D. Mich. Dec. 18, 2025); *Quintero-Martinez v. Raycraft*, No. 1:25-cv-1507, 2025 WL 3649515 (W.D. Mich. Dec. 17, 2025); *Puerta Marin v. Lynch*, No. 1:25-cv-1444, 2025 WL 3533028 (W.D. Mich. Dec. 10, 2025); *Parra Ocanto v. Lynch*, No. 1:25-cv-1447, 2025 WL 3522113 (W.D. Mich. Dec. 9, 2025); *Arevalo v. Lynch*, No. 1:25-cv-1365, 2025 WL 3522106 (W.D. Mich. Dec. 9, 2025); *Rodriguez Martinez v. Raycraft*, No. 1:25-cv-1504, 2025 WL 3511093 (W.D. Mich. Dec. 8, 2025); *Godoy Zelaya v. Lynch*, No. 1:25-cv-1355, 2025 WL 3496472 (W.D. Mich. Dec. 5, 2025).

The Sixth Circuit held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*."). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. Here, Petitioner entered the United States at a port of entry, and Respondents granted Petitioner parole into the United States, determining that Petitioner was not a flight risk or danger. Respondents have now detained Petitioner, and there is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

The second *Mathews* factor also weighs in Petitioner's favor. Clearly, there is a high risk of erroneously depriving Petitioner of his freedom if Petitioner does not receive an individualized determination regarding the revocation of his parole. "To mitigate the risk of erroneous deprivation, due process would require, '[a] minimum, the opportunity for [Petitioner] to submit evidence relevant to whether [the government] should revoke [his parole] before [it] make[s] a revocation decision.'" *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 153 (W.D.N.Y. 2025) (citation omitted).

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025) (citation omitted). However, Respondents have not shown that they have a significant interest in Petitioner's continued detention. Notably, continuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention. *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention violates Petitioner's Fifth Amendment due process rights.

## VI. Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

### VII.  Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of the other named Respondents.[7]

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has concluded "that a detained alien generally must designate his immediate custodian—the [Immigration and Naturalization Service (INS), the predecessor to the present immigration-related agencies,] District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, the remaining Respondents are the Director of the Detroit Field Office of ICE, the Acting Director of ICE, and the United States Secretary of Homeland Security.

In *Roman v. Ashcroft*, the Sixth Circuit stated that although it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, . . . [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court explained:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they

---

[7] As noted above, the parties jointly stipulated to the dismissal of Respondent Edlow from this action. *See supra* note 1 (citing ECF No. 19).

> filed a habeas corpus petition. *Chavez–Rivas*[ v. Olsen], 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft*, 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); . . . . In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[ v. Comm'r], [No. 00 CIV. 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief in the event that Petitioner is transferred out of the Western District of Michigan, the Court will not dismiss the Acting Director of ICE and the United States Secretary of Homeland Security as Respondents.

## Conclusion

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from custody, subject to any conditions that existed under Petitioner's § 1182(d)(5)(A) parole. The Court will also order Respondents to file a status report within three days of the issuance of the Court's Opinion and Judgment to certify compliance with this Opinion and the corresponding Judgment.

Dated:     February 3, 2026                              /s/ Jane M. Beckering
                                                                                Jane M. Beckering
                                                                                United States District Judge